**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.E.-1 and Z.E.**

**No. 22-0039** (Gilmer County 20-JA-16 and 20-JA-17)

**MEMORANDUM DECISION**

Petitioner Father J.E.-2, by counsel Jared S. Frame, appeals the Circuit Court of Gilmer County's June 7, 2021, order terminating his parental rights to J.E.-1 and Z.E.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights based solely upon his incarceration and failing to ascertain his competency.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the instant case, petitioner was arrested and charged with various sex-related offenses against his now-adult daughter. A child abuse and neglect petition was filed against petitioner as a result and, in April of 2018, the circuit court placed J.E.-1 and Z.E. in their

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as J.E.-1 and J.E.-2, respectively, throughout this memorandum decision.

1

mother's custody.[2] Subsequently, in March of 2019, petitioner was convicted of two counts of incest, one count of sexual abuse by a parent, and one count of sexual assault in the second degree. He was sentenced to an aggregate term of thirty to seventy-five years in prison.

In November of 2020, the DHHR filed a child abuse and neglect petition against petitioner and the mother. Specifically, the DHHR alleged that Child Protective Services ("CPS") workers, accompanied by law enforcement, responded to the mother's home following a referral alleging drug abuse in the home. Initially, the adults in the home claimed that the mother and the child J.E.-1, then twelve years old, were not in the home; however, they eventually permitted the CPS workers and law enforcement officers to search the home. The DHHR alleged that the CPS workers and officers found a room in the home that was locked with a padlock. One of the adults in the home produced a key to the padlock, and the CPS workers and officers found the mother and J.E.-1 in the room, surrounded by drug paraphernalia and drugs. The mother was intoxicated and claimed that she had consumed prescribed Xanax, but then contradicted her statement by claiming that her prescription had run out three months prior. The DHHR further alleged that the home was in deplorable condition and lacked sufficient food. The CPS workers claimed that trash and possessions were stacked throughout the home in piles that went up to the workers' waists and, in some parts, their shoulders. The home's roof was collapsing, there were soft spots in the flooring due to rot, and the heat sources were dangerous. There were also fifteen to twenty cats in the home, and the home smelled of urine and feces. The DHHR further alleged that petitioner was incarcerated, and that continuation in the home was contrary to the best interests of the children. In February of 2021, the DHHR filed an amended petition against petitioner, adding allegations surrounding petitioner's criminal convictions of sex crimes against the children's older sibling, his sentence, and his resulting inability to care for or provide for the children.

The circuit court held an adjudicatory hearing in March of 2021. After hearing evidence, the court found that petitioner did not have a fit, apt, or suitable home for the children; had not provided for the children; and was serving a lengthy prison sentence as a result of his felony convictions. The court further found that, during the prior proceedings, the court did not terminate petitioner's parental rights as the children were in the sole care of the mother during petitioner's incarceration, but that the mother's parental rights were terminated in the instant proceedings. Accordingly, the circuit court adjudicated petitioner as a neglectful parent.

In May of 2021, the circuit court held a dispositional hearing. Petitioner's counsel requested a continuance, noting that petitioner's habeas corpus proceedings had been continued in order to obtain a competency evaluation for petitioner. Counsel stated, "I don't know if the competency issue becomes relevant in this case." The DHHR and the guardian objected to a continuance. The circuit court denied the motion, and the matter proceeded to disposition.

---

[2]The record is conflicting as to what disposition the circuit court imposed in the 2018 abuse and neglect case. The initial petition in the instant case indicated that the circuit court imposed disposition pursuant to West Virginia Code § 49-4-604(c)(5). However, in the adjudicatory order, the circuit court found that, although petitioner was previously adjudicated as an abusing parent, the court in petitioner's prior abuse and neglect case did not enter a final disposition regarding petitioner in that action.

A CPS worker testified and recommended that petitioner's parental rights be terminated, noting that petitioner had been convicted of "molesting his daughter," had been sentenced to thirty to seventy-five years of incarceration, and would not be eligible for parole until 2034. The worker further noted that, due to petitioner's incarceration, he was unable to participate in any improvement period and could not provide for the children in any manner.

Petitioner testified he provided for the children while he was in prison, including assisting the mother in obtaining housing and purchasing a cellphone and gifts for J.E.-1. Petitioner further indicated that he was contesting his conviction through a habeas corpus proceeding and did not "understand why my rights should be terminated."

At the close of the hearing, the circuit court found that petitioner had been convicted for incest involving his daughter and had been sentenced to incarceration, a term of not less than thirty years nor more than seventy-five years. The circuit court specifically stated that in considering petitioner's incarceration as a basis for the termination of his parental rights, it was also considering that petitioner would be incarcerated "well past any of these children reaching the age of majority," that petitioner was unable to provide a suitable home for the children, and that he had been convicted of the sexual assault, abuse, and incest of his daughter. As such, the circuit court terminated petitioner's parental rights to the children upon finding that there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the children's welfare. Petitioner appeals the June 7, 2021, dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights on the sole basis of his incarceration. Petitioner states that no new allegations were included in the

---

[3]The mother's parental rights were also terminated below. Z.E. is currently placed with his adult sister and will soon reach the age of majority. J.E.-1 was placed in a foster home, and the permanency plan for the child is adoption in that home.

underlying petition other than his incarceration and that no new evidence was presented in that regard. Petitioner blames the mother for the termination of his parental rights and states that, under the allegations set forth by the DHHR, no incarcerated individual is able to properly care for a child. Petitioner also claims that the circuit court did not consider the impact of the termination of his parental rights on the children.

We find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

Contrary to petitioner's assertions, "this Court has never held that incarceration can not be the sole basis for terminating parental rights." *Cecil T.*, 228 W.Va. at 96, 717 S.E.2d at 880. Further,

> *[w]hen no factors and circumstances other than incarceration are raised* at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

*Id.* at 91, 717 S.E.2d at 875, Syl. Pt. 3 (emphasis added). The circuit court was within its discretion to consider petitioner's incarceration as the sole basis of the termination of his parental rights. Here, the circuit court clearly considered factors and circumstances surrounding petitioner's incarceration as contemplated by *Cecil T.* As noted above, the circuit court considered the nature of petitioner's convictions, which included sex-related crimes against his now-adult daughter. The circuit court also considered that petitioner had received a lengthy sentence and would not be eligible for parole until after the children reached adulthood, that petitioner would be unable to participate in services, and that petitioner could not provide his children with suitable housing. While petitioner claims that no additional allegations were made since his prior abuse and neglect proceeding, the circuit court concluded that the prior court did not to address disposition and terminate petitioner's parental rights since the children's mother was able to care for them. The court noted, however, that the mother's parental rights had since been terminated, leaving the children without proper care. Moreover, petitioner's conviction occurred after the filing of the prior petition and, as such, his conviction and sentence were new information to the court. As we have explained, "'[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d

4

8 (2014). Further, "[i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604], the circuit court shall give priority to securing a suitable adoptive home for the child." Syl. Pt. 3, in part, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998).

To the extent petitioner argues that he should have been granted a less-restrictive alternative disposition to the termination of his parental rights, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, based on the foregoing, we find no error in the termination of petitioner's parental rights.

Lastly, petitioner argues that the circuit court erred in not ascertaining his competency when terminating his parental rights. According to petitioner, whenever a court of record in a criminal matter has reasonable belief that a defendant may be incompetent, an evaluation as to mental capacity shall be ordered. *See* W. Va. Code § 27-6A-2. While this case is not a criminal one, petitioner's mental competency was never reviewed by the lower court, despite counsel alerting the court that petitioner's mental competency was being examined by the habeas court. Petitioner claims the court made scant findings in denying his motion to continue and claims that he was "denied the right to present his case to the lower court due to his difficulty in understanding the process."

We find that petitioner has failed to meet his burden on appeal as to this issue. Petitioner fails to cite to any authority regarding a circuit court's duty to ascertain mental capacity in child abuse and neglect proceedings in support of his assertions. Moreover, while petitioner argues that the court made scant findings regarding the issue, petitioner's counsel failed to present any evidence regarding petitioner's habeas case, the basis for his mental competency evaluation in that proceeding, the date it on which the evaluation had been scheduled, or whether counsel even believed petitioner to be incompetent.[4] At no point did petitioner's counsel state that petitioner had difficulty understanding the proceedings, appeared to be incompetent, or required a competency evaluation in this matter. Petitioner's counsel further indicated that he did not know if the competency in the habeas matter was, in fact, relevant to the instant case, and petitioner's counsel never requested a guardian ad litem be appointed to petitioner. We have held that "[e]rror will not be presumed, all presumptions being in favor of the correctness of the judgment. Syl. Pt. 4, *State v. Myers*, 229 W. Va. 238, 728 S.E.2d 112 (2012) (citations omitted). Petitioner failed to request a competency evaluation in the proceedings below and failed to demonstrate that the circuit court

---

[4]Petitioner's underlying counsel did not represent him in his habeas matter.

erred in proceeding to disposition without waiting to see the results of petitioner's evaluation in his habeas matter. Accordingly, petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 7, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: August 31, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn